IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>SAINT JAMES APARTMENT PARTNERS, LLC,<br><br>Debtor(s). | CASE NO. BK 19-80878<br><br>CHAPTER 11<br><br>ADV. NO. A20-8004-TLS |
| SAINT JAMES APARTMENT PARTNERS, LLC,<br><br>Plaintiff(s)<br><br>vs.<br><br>ST. JAMES MANOR, L.P.,<br><br>Defendants(s). | |

ORDER

This matter is before the court on the defendant's motion to dismiss adversary proceeding (Fil. No. 5) and reply by the plaintiff (Fil. No. 11). Theodore R. Boecker, Jr., represents the debtor-plaintiff, and Kristin Krueger represents the defendant. Briefs were filed and, pursuant to the court's authority, the motion was taken under advisement without oral arguments.

The motion is denied.

While the debtor does not address the court's subject-matter jurisdiction in the complaint, instead moving directly into its grievances concerning the defendant's conduct, the court nevertheless must assure itself of its jurisdiction. As the parties are undoubtedly aware, "[a] bankruptcy court, on referral from a district court, has jurisdiction in cases 'arising under title 11, or arising in or related to cases under title 11.'" *Sears v. Sears (In re AFY, Inc.)*, 902 F.3d 884, 888 (8th Cir. 2018) (quoting 28 U.S.C. § 1334(b) and citing 28 U.S.C.§ 157(a) and Neb. D. Ct. Gen. R. 1.5). "Related to" jurisdiction exists when

> "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quoting *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987)). There is such an effect if the outcome of the case "could alter the debtor's rights, liabilities, options, or freedom of action," and could "in

any way impact[ ] upon the handling and administration of the bankruptcy estate."
*Id.* (quoting *Dogpatch*, 810 F.2d at 786)."

*AFY, Inc.*, at 888.

Here, the debtor as plaintiff contends it is entitled to damages for the defendant's actions and should be permitted to offset those damages against amounts owed to the defendant. If the debtor is successful in this lawsuit, its assets and liabilities would be affected, which would "impact upon the handling and administration of the bankruptcy estate." The adversary proceeding is therefore related to the bankruptcy case, and this court has jurisdiction over the proceeding. The defendant has stated its consent to entry of final orders and judgments by this court. *See* 28 U.S.C. §157(c)(2).

This dispute concerns the sale of the St. James Manor subsidized affordable housing complex in Omaha, Nebraska. Since the mid-1970s, the United States Department of Housing and Urban Development ("HUD") has provided housing assistance payments to the complex's owner under the terms of a renewable agreement referred to as a HAP contract. In June 2018 the debtor purchased the property from the defendant for rehabilitation. Under the terms of the agreement[1], the debtor paid $400,000 in cash and gave the defendant a promissory note for $2,550,000 in exchange for

- a special warranty deed transferring the apartment complex to the debtor;
- a bill of sale for the non-real property,
- a general assignment of leases and contracts;

---

[1]Generally, on Rule 12(b)(6) motions, "matters outside the pleadings" are not considered. Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012. However, the court may consider "materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)). Such documents "include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). The purpose of this rule "is to prevent a plaintiff from avoiding an otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it relies." *Young v. Principal Fin. Grp., Inc.*, 547 F. Supp. 2d 965, 973-74 (S.D. Iowa 2008).

The paradigmatic example of material "necessarily embraced" by a pleading is a written contract in a case that involves a dispute over the terms of the contract. *Id.* at 974. Here, the complaint deals entirely with what the seller did or did not do under the terms of the purchase agreement and the general assignment of leases and contracts, yet the debtor did not include attach either to its complaint. Because those documents are integral to the complaint and to ruling on this motion, the court has necessarily referred to copies of those documents filed in the bankruptcy case as attachments to the October 2, 2019, affidavit of John C. Foley (Fil. No. 67).

- an affidavit concerning liens and encumbrances;
- a closing statement;
- evidence that real estate taxes and utility payments were current; and
- miscellaneous other closing documents.

The seller also agreed to perform a number of other obligations, including:
- cooperating in the assignment and assumption of the HAP contract, including providing and executing the necessary documentation to complete the assignment and assumption;
- warranting that no undisclosed litigation existed;
- delivering the necessary documentation for a title insurance policy to be issued;
- arranging for the release of any liens or encumbrances on the property;
- satisfying the existing deed of trust;
- delivering to the debtor all of the books, records, etc., pertaining to the property;
- posting necessary notices; and
- giving the debtor permission to contact HUD and obtain information pertaining to the property.

The general assignment of leases and contracts includes an attachment specifically addressing the assignment and assumption of the HAP contract. It purports to "irrevocably assign[] the HAP Contract to [the debtor] together with all rights and obligations in and under said contract," release the seller from any liability under the HAP contract, amend the HAP contract to include provisions regarding inspections and financial reporting, and memorialize the parties' intent that the HAP contract continue in full force and effect. The preamble statements to the assignment clearly recognize the need to have the HUD Secretary approve the assignment and indicate that the debtor had submitted a request for such approval. The buyer and the seller executed the assignment on October 30, 2018. Notably, the signature block for the HUD contract administrator remains blank.

In the meantime, in August 2018 – after the closing of the sale of the property and before the execution of the HAP contract assignment – the defendant and HUD renewed the HAP contract for one year. In the renewal contract, the defendant warranted that it had "the legal right to execute the "Renewal Contract and to lease dwelling units covered by the contract."

Because neither HUD nor the defendant made any housing assistance payments to the debtor despite the provisions in the sale documents, the debtor filed its petition for relief under Chapter 11 in June 2019, noting that the St. James complex was its only real estate asset.

In August 2019, the defendant, identifying itself as owner of St. James Manor, sent a letter to all residents informing them that the HUD Section 8 housing subsidy contract would expire on August 31, 2020, and would not be renewed. The letter explained that upon

- 3 -

expiration of the contract, HUD would likely shift the housing assistance allocation from project-based (under which HUD paid the rent subsidy directly to the landlord) to tenant-based (under which each tenant would be given a rent voucher to use for any rental housing that agreed to accept it).

The debtor filed this adversary proceeding in February 2020, seeking $1.6 million in damages for breach of contract and misrepresentation and a declaration that it is entitled to set-off any damages against any amount claimed by the defendant under the promissory note. The debtor succinctly identifies the issue as follows:

> [C]an a party sell a piece of property, convey all of its right, title and interest in the property and, thereafter, act inconsistent with that promise in the form of a deed, and to go so far as to tell tenants (of a property it does not even own) that they must start to look for a new place to reside because the contract pursuant to which they occupy the premises is not going to be renewed?

The defendant now moves to dismiss the complaint on the basis that it fails to state any claim upon which relief may be granted.

Federal procedural rules require a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008(a). A motion to dismiss made under Rule 12(b)(6) concerns the legal sufficiency of a complaint based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) (made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b)). Rule 12(b)(6) serves to "eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), the federal pleading rules require that the facts alleged must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, n.3 (2007) (citations omitted). In other words, factual allegations must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (federal rules "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Only a complaint that presents a "plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Determining whether a plausible claim for relief has been stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

As for the debtor's claims of fraudulent misrepresentation/concealment, the evidentiary rules contain a heightened pleading standard for fraud, requiring that allegations of fraud must be pleaded with particularity. Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). "In other words, Rule 9(b)

- 4 -

requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"*Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011) (quoting *Great Plains Trust Co. v. Union Pac. R.R. Co.,* 492 F.3d 986, 995 (8th Cir. 2007)).

The defendant first argues that the debtor's breach of contract and setoff claims are barred by the purchase agreement's provision requiring a party with a claim of damages to provide notice to the other party on or before the first anniversary of the closing date. Because the debtor did not provide the defendant with notice of its claims by June 29, 2019, the defendant asserts the claims must fail as a matter of law.

While the contractual notice provision may be a defense belonging to the defendant to be raised at the appropriate time, it is not relevant to whether the complaint states a claim.

The defendant next argues that the complaint conflates the issue of the transfer of the property pursuant to the sale with the issue of the assignment of the HAP contract. This may be attributable more to loose drafting than a failure to state a claim, as the debtor does not argue that the sale did not occur or the property was not properly transferred. Rather, the debtor appears to be focusing on the assignment aspect of the entire sale transaction and how the defendant can justify executing the HAP renewal as "owner" after it had transferred the property to the debtor.

The defendant's third argument is that the debtor has failed to state a claim as to the alleged breach of the special warranty deed. Specifically, the complaint alleges:

> The Defendant's actions, including purporting to sign documentation as the purported "Owner" subsequent to the closing, are also inconsistent with the Special Warranty Deed delivered to Plaintiff wherein the Defendant represented that the property was "free from encumbrances" other than those recorded "of record", that it had "legal power" and "lawful authority" to convey the real estate, and that it would warrant and "defend the title to the real estate" conveyed to Plaintiff.
>
> . . .
>
> By virtue of its execution of the HAP renewal as purported "Owner" in August 2018, the Defendant breached its contractual obligations with the Plaintiff, including but not necessarily limited to those arising under the terms of the Purchase Agreement and the Special Warranty Deed.

Compl. ¶¶ 38, 49 (Fil. No. 1).

Again, the debtor is painting with a broad brush in its breach of contract allegations, and while it remains to be seen whether the debtor can prove everything it claims, its challenges to the defendant's actions in light of the debtor's understanding of the overall transaction are sufficient to survive the pleading stage.

The defendant's final argument concerns the debtor's claim of misrepresentation.

The complaint states:

Defendant represented that it had good and marketable title and that there were no contracts, which were not of record, which would prevent the sale and conveyance of all of its right, title and interest in the subject property.

Defendant made representations as an inducement to purchase and closing, including an affidavit provided at closing, executed by a representative of the Defendant representing it had power to convey the property and that there were no unrecorded contracts which limited its power of conveyance.

Compl. ¶¶ 54, 55 (Fil. No. 1). These allegations concern the defendant's knowledge that its ability to convey its interest in the HAP contract was limited by governmental requirements, and its alleged failure to make the debtor aware of this limitation prior to closing the sale.

The complaint goes on to describe these representations as knowingly false, misleading, and inconsistent with the defendant's post-closing conduct, and it knew or should have known that the debtor would rely on its representations. The complaint also alleges that the defendant "either intentionally or negligently omitted to disclose to the Plaintiff material information concerning the property [including latent defects in its condition.]" *Id.* at ¶ 59.

In these allegations, the defendant identifies two types of misrepresentation: fraudulent misrepresentation and fraudulent concealment. The debtor does not disagree. The defendant asserts that at least of some of the fraud claims merely echo the breach of contract claims and therefore are not plausible bases for relief. The defendant also asserts that the complaint fails to specify what information was allegedly concealed from the debtor, which would undermine the fraudulent concealment claim. The complaint does state – and the debtor clarifies in its brief in opposition to the motion – that the defendant intentionally failed to inform the debtor of tenant complaints regarding bedbug infestations and "multiple failures in providing services to tenants." The debtor claims that timely knowledge of this information would have affected the price it was willing to pay for the property, and is the basis for the fraudulent concealment claim.

As to the alleged overlap between the breach of contract and fraudulent misrepresentation claims, the debtor's argument focuses mainly on the alleged breach by the defendant in representing that it had the authority to sell all of its interest in the property, including the HAP contract, and in agreeing to assist the debtor in obtaining permission from HUD to take over the HAP contract, yet acting directly contrary to that by representing itself as the property's owner and renewing the HAP contract. The debtor goes on to characterize the defendant's alleged "misrepresentation by omission of a material fact" – the alleged failure to disclose to the debtor that HUD consent was necessary before a HAP contract could be assigned – as a misrepresentation claim which is independent of the breach claim.

If the debtor is actually arguing – as it seems to be – that its complaint is based almost entirely on the fact that it did not know at the time this transaction took place that a HAP contract could not simply be transferred between parties without HUD's knowledge and approval, then it beggars belief. If the company is in the business of developing affordable housing, it should be presumed to be aware of HUD rules and regulations. Even if the debtor was not aware of such requirements prior to this transaction, the sale documents gave it an indication. The general assignment of leases and contracts assigned all of the defendant's right, title, and interest in the defined contracts "**to the extent assignable**." General Assignment ¶ 3 (emphasis added). The defendant's inability to unilaterally transfer the HAP contract to the debtor should have been abundantly clear from the third paragraph in the HAP contract assignment and assumption agreement – "Whereas, the Buyer has submitted to the [HUD] Secretary an Application and documents in support thereof requesting the Secretary's approval of the proposed assignment of the HAP Contract to the Buyer as set forth in the aforesaid Real Estate Purchase and Sale Agreement" – as well as from the representations made by the debtor in the purchase agreement ("Except as may otherwise be set forth herein, Buyer has obtained all consents, approvals, authorizations, or order of third parties, including governmental authorities, necessary for the authorization, execution and performance of this Agreement by the Buyer." Purchase and Sale Agreement ¶ 8(b)(II)(3)).

The real question, rather, seems to be why the debtor did not receive HUD approval to assume the HAP contract and why the defendant represented itself to HUD as the property's owner in the months after the sale in its dealings with HUD and in its correspondence to the tenants.

That being said, the purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed to be true and are construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue before the court is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Scheuer*, 416 U.S. at 236.

With those guidelines in mind, the motion to dismiss must be denied and the complaint -- no matter how inartfully pleaded – must be permitted to proceed.

IT IS ORDERED: The defendant's motion to dismiss adversary proceeding (Fil. No. 5) is denied.

DATED: April 30, 2020.

BY THE COURT:


/s/Thomas L. Saladino
Chief Judge


Notice given by the Court to:
 Theodore R. Boecker, Jr.
*Kristin Krueger
 U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.